HAIGHT & FREESE CO. v. WEISS et al.

(Circuit Court of Appeals, First Circuit. October 1, 1907.)

No. 695.

1. COURTS—JURISDICTION OF FEDERAL COURTS—CORPORATIONS.

It is settled law that for purposes of the jurisdiction of a federal court a corporation is a citizen only of the state in which it is incorporated; and, where it is doing business and has an established office in another state, such fact does not affect its citizenship, but it may be there sued in such court by a citizen of the state residing in the district.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 860.

Jurisdiction over corporations, see note to St. Louis, I. M. & S. Ry. Co. v. Newcom, 6 C. C. A. 174.]

2 EQUITY—JURISDICTION—REMEDY AT LAW.

A bill against a corporation, which asks for the cancellation of releases alleged to have been fraudulently obtained by defendant, and further asks that defendant be wound up on the ground of insolvency, and also on the ground that its business is illegal, states a case cognizable in equity, so that the bill cannot be dismissed on the ground that complainant has an adequate remedy at law, because, when a bill states one cause

of action cognizable in equity, it is not subject to a motion to dismiss, even though it states other grounds of suit not so cognizable.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, § 759.]

**8.** APPEAL—REVIEW—FINDINGS OF MASTER.

Where an order referring the whole cause to a master would have been irregular when made, under the equity rules, unless by consent of the parties, such consent must be presumed by the appellate court, in the absence of anything on the subject in the record.

**4.** SAME—WAIVER OF RIGHT OF APPEAL—ACQUIESCENCE IN ORDER.

Where, after the entry of an ex parte order appointing a temporary receiver, the defendant by agreement made by counsel consented to the retention of the receivership, he cannot review such order on an appeal taken from a subsequent decree in the cause.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, § 3611.]

Appeal from the Circuit Court of the United States for the District of Massachusetts.

See 152 Fed. 479.

Gilbert F. Ordway (Franklin Bien, on the brief), for appellant.

William P. Maloney, for appellee Weiss.

William D. Turner (George Hoague, on the brief), for appellees Colt and Campbell and others.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge. This is a bill in equity, brought on May 8, 1905, by Anna L. H. Weiss, administratrix, against the Haight & Freese Company, a corporation, in behalf of herself and other creditors who might intervene; but neither the complainant nor any one else who did intervene had recovered judgment. The complainant describes herself as a citizen of Massachusetts, and the respondent as a corporation created by the laws of New York, with a usual place of business in Massachusetts, and as having appointed the commissioner of corporations of Massachusetts its attorney for receiving service of process. Of course, the allegation that it has a usual place of business in Massachusetts, coupled with the allegation that it had appointed the commissioner its agent for receiving service of process, must be accepted as equivalent to a statement that the corporation was transacting business in Massachusetts at the time the bill was brought.

A number of the errors assigned insist merely that the Circuit Court had no jurisdiction because the allegations of the bill make the corporation a citizen of Massachusetts, so that consequently, on its face, both complainant and respondent are citizens of that state. After the Supreme Court has rendered decision on decision that a corporation cannot migrate, and that the fact that it is doing business in a state other than that of its organization does not create it a citizen thereof, it seems quite inconceivable that a proposition of this character should be urged on us. The respondent cites a decision of the Circuit Court for this circuit (Consolidated Store Service Co. v. Lamson Co., 41 Fed. 833); but that decision was entirely in harmony with the law as we have stated it. It is true that in that suit, which was between two corporations, neither corporation was organized in the state constituting

the district where the suit was brought; but that was not the point which was pressed on the court. The court, at page 834, referred distinctly to the rule we have stated, that a corporation cannot migrate, and expressed the fact that this was even then well settled. The opinion continued as follows:

"I think, however, the true ground upon which the court should take jurisdiction is this: That the corporation consents to be sued as a condition for doing business within such state, and that it should be held to its agreement."

At that time this proposition was somewhat doubtful, but it has since been thoroughly established by the Supreme Court to be the law; and it is on that ground, in connection with the fact that complainant is a citizen of Massachusetts, that the corporation was lawfully served in the district of Massachusetts, and the Circuit Court for that district could take jurisdiction.

The complainant declares that she is the administratrix of the estate of one Charles Weiss; that the respondent is a corporation doing what is known as a "bucket-shop" business at Boston, New York, and elsewhere; that her intestate gave the respondent orders for the purchase and sale of stocks, paying in various sums of money amounting in all to $5,380; that he supposed the respondent was actually buying and selling stocks on his account; that, instead of buying and selling, the respondent was simply making book entries, without any actual transactions, thus doing the "bucket-shop" business; that, after the decease of Weiss, the complainant, as administratrix, had a settlement with the respondent in which it made due her only $160; that both the complainant and her intestate were ignorant of the fact that the respondent's transactions with the intestate involved in the account were fictitious, in that no actual purchases and sales were made; that the account was wholly fictitious, unknown both to Weiss and the complainant, as his administratrix; that, in consequence thereof, the respondent really owed the complainant, as such administratrix, at the time of the settlement, $5,380, less $160 paid her by it; that full releases had been given both by Weiss and by the complainant, as his administratrix, in ignorance of the facts; and that the releases were therefore invalid. The bill contained prayers that an account might be taken of the amounts due complainant, and for such other relief as the case might require, which, of course, involved the canceling of the releases.

The bill also complained that the respondent was engaged in an illegal enterprise, meaning what it described as a "bucket-shop" business, and that therefore the corporation should be restrained, and be wound up, and its assets distributed. It further alleged that the corporation had a large number of creditors and not sufficient assets to pay their claims, and that it was carrying on its operations from day to day by means of the money received from its customers, dealing with them in the illegal and fraudulent manner which we have described, and it was so framed as to make the alleged insolvency another ground for the distribution of its assets. The allegations of the bill, and the portions thereof asking relief, were not exactly in the order or the phraseology which we have stated, but the substance was in accordance therewith.

Sundry creditors were permitted to intervene; but we do not per-

ceive, so far as that is concerned, that we will have any occasion to do more than to state the fact.

On the filing of the bill, and without notice to the respondent, but on a motion therefor which was supported by a bond given by the complainant with a surety in the penal sum of $10,000, conditioned to respond to damages as usual, a receiver was appointed, the order for which, of course, was merely interlocutory, so that the receiver as thus appointed should probably be described as an interlocutory receiver. On June 5, 1905, the respondent filed an answer, the substance of which is sufficiently stated by it as follows:

"The answer of the defendant alleged that Charles Weiss, the complainant's intestate, fully understood the nature of his transactions with the defendant, and that the defendant transacted business with said Weiss according to his instructions; that the complainant, as administratrix, was paid the sum due the said Charles Weiss according to his account with the defendant, and thereupon, after a full opportunity to examine the same, freely and voluntarily executed and delivered to the defendant a release under seal, wherein she released and discharged the defendant from all right of action, claim, or demand for any payment at any time heretofore made or value of anything at any time heretofore delivered on any contract or transaction whatever, and covenanted never to sue therefor. The answer further alleged that the business of the defendant was legitimate and proper, and that it kept proper books of account, and was able to meet all its just claims in the ordinary course of business."

It filed no plea nor demurrer. Subsequently it amended its answer; but we need not refer to the details of this. On January 17, 1906, the complainant filed a general replication, and thus the case was put fairly and formally at issue on serious and important questions of fact and law. No proceedings, however, were taken in accordance with the rules in equity 67 et seq., which direct how proofs shall be made up after formal issues in the manner we have described; but the case was referred to a master, who passed on all the substantial issues, and made a report to which the respondent excepted at great length. The exceptions were overruled, and, on June 10, 1906, a decree was entered sustaining the claims of the original complainant and of some of the creditors who intervened, and settling the amount of each. We do not find the decree specifically adjudged that the releases in question were invalid and ordered them annulled. It, however, adjudged that the allegations of the bill of complaint had been fully sustained by the proofs, and, as we have said, it established the claims of the complainant and of the intervening creditors. This necessarily includes an adjudication setting aside the releases, notwithstanding the lack of specific phraseology to that effect. The decree also contained the following:

"Ordered, adjudged, and decreed as follows:
"That the receiver heretofore appointed in said cause, James D. Colt, be, and he hereby is, made permanent receiver, with full power to receive, sue for, and recover all moneys, debts, or property to which said company may be entitled, and to enforce, by suit or otherwise, or to compromise, in his discretion, any and all liabilities of any person or corporation to said company; to sell and dispose of, either at public auction or at private sale, at such prices and upon such terms as he may deem expedient, all property, choses in action, rights of action, and assets belonging to said company; and with all such other powers as are incidental to a full and complete administration of his duties as such permanent receiver, to the end that all the property and effects of said

corporation may be collected and converted into cash, in order to be distributed as hereinafter provided."

This, in accordance with the settled practice of the Supreme Court, was an appealable decree; and thereupon the complainant seasonably appealed to us, and assigned formally 17 alleged errors. The seventeenth referred to the exceptions to the master's report of which we have already spoken, as to which the respondent's brief relies on 31, making in fact 48 distinct alleged errors on which we have been asked to pass.

In the progress of the proceedings, the receiver settled an account, to which some objections were taken by the respondent. The respondent did not, however, take out any citation to the receiver, brought to our attention or which we have discovered, so that the account is not before us. Notwithstanding the receiver was not made a party to the appeal, he has filed a brief, which we have no occasion to consider, not only because no issue involving him is before us, inasmuch as he is not named in the citation, but also because it is the receiver's duty to hold the scales evenly, and not to intermeddle beyond the orders of the court appointing him in questions between the original parties to the litigation which do not personally affect him. As, however, the allowance of the receiver's accounts and certain special allowances to the receiver were assigned by the respondent as errors, and as both parties have submitted certain views in reference thereto, we may as well observe that the record is in no form to enable us to pass on the questions involved with regard to either branch of this topic. The account covers nearly 10 printed pages, and is made up of numerous details, the most of them of petty amounts. The order of the Circuit Court allowing it was general and in lump. The accounts were never sent to a master so far as the record shows; and, even if there were any proofs or suggestions which would enable us in any particular to fathom any of the questions involved, we should decline to do it. As explained by the Supreme Court in Chicago, etc., Railway v. Tompkins, 176 U. S. 167, 179, 20 Sup. Ct. 336, 44 L. Ed. 417, we should not undertake the work which should be done by a master. Therefore in no event is there sufficient in the record to enable us to take up this topic.

A proposition made by the respondent that the court was without authority to allow the receiver's accounts until the final determination of the cause was, of course, without support, either in law or practical sense, with reference to one like that in question here, which related mainly, if not entirely, to minor necessary expenses pendente lite.

Several errors assigned relate to the refusal to grant a motion to dismiss the bill. We are told that some time during the progress of the litigation the respondent moved to dismiss the bill on the ground, as stated by it in its assignment of errors, that the complainant had an adequate remedy at law. The briefs of both parties have paid scant regard to our rules, and, as to this motion, neither has referred us to the page where it can be found, so we take the facts from the parties. It is said that this motion was not made until after replication, the reference to the master, and the filing of his report, and it is claimed by the complainant that this delay operated as a waiver. The bill contains several alleged grounds of proceeding, all of which are equitable in

their nature, and for none of which can a remedy be given at law. The first is for relief by canceling of releases under seal said to have been fraudulently obtained, which is peculiarly a topic for equity. The next is the claim that the corporation was insolvent, and asking for the winding up of its affairs on that ground. Passing by the question whether a bill for that purpose should, if objected to, be allowed to be maintained outside of the district of the domicile of the corporation, and also the question arising from the fact that the Supreme Court has steadily maintained that a debtor has a right to an issue to a jury on a claim which has not gone to judgment, and that therefore, in the federal courts, an ordinary creditors' bill cannot be maintained until there has been a judgment, such relief is clearly equitable in its nature, unless there is some statute especially providing for the winding up of corporations.

The third topic of which the bill treats is a claim that the corporation be wound up because its main business was that of conducting "bucket shops," which it is said is of a fraudulent character. Passing by the question whether a corporation can be wound up for any reason of that nature unless a statute of the state of its creation especially provides therefor, this topic is also one purely for equitable consideration. Therefore, aside from the fact that, even where there is an adequate remedy at law, the right to exclude the complainant from the chancery may be waived when the topic is of an equitable character, as complainant says was done here, it is clear that the whole subject-matter of this bill was purely equitable, and, therefore, in no event could a motion be sustained of the character we have described. Indeed, we may go further and remark that, inasmuch as the claim for the canceling of the releases in question was properly suable in equity, a motion to dismiss would not lie, even if the entire burden of the bill aside from that was not anywhere cognizable, because even in that event the respondent's remedy would not be by a motion to dismiss, or by a general demurrer, but by a demurrer to the parts of the bill which were demurrable and an answer or plea to the rest.

The remaining errors assigned, except the seventeenth, and except the objection based on the fact that a receiver was appointed without notice, are either clearly frivolous or relate to rulings as to which the record is not sufficient to show that they could be prejudicial, even if they were erroneous. The seventeenth assignment concerns exceptions to the rulings of the master. The master's report was summarily filed without any submission to the parties of a draft as required in equity, so that there was no opportunity to file exceptions before him, and, consequently, no explanations by him which would enable this court to understand the relations of the exceptions to the facts of the case. Neither were the proofs brought in by the master. The parties have not referred us to the order appointing the master, and we have not found it. It was said in the opinion of the learned judge of the Circuit Court, and also by counsel for the complainant, that this order did not require him to return the proofs into court. We are unable, therefore, to discover enough in the record to assist us in determining whether his rulings objected to were material or prejudicial, even if erroneous.

In fact, inasmuch as the reference to the master of the issues raised by the bill and answer, at the stage of the case when it was made, was irregular under equity rules 67 et seq., to which we have referred, and under the decisions in Kimberly v. Arms, 129 U. S. 512, 524, 9 Sup. Ct. 355, 32 L. Ed. 764, and Davis v. Schwartz, 155 U. S. 631, 636, 637, 15 Sup. Ct. 237, 39 L. Ed. 289, unless made by the consent of the parties, we are unable with this defective record to divest his report in any particular of the peculiar force which, according to the decisions we have cited, must be given it. While we are not able to ascertain from the record that the reference was by the express consent of the parties, yet, as otherwise it would have been irregular, and was not objected to so far as the record shows, we must conclude that it had their implied consent if not an express one. In any view, however, there is not enough before us to enable us to review any of the findings excepted to. The decree appealed from conformed strictly to the findings, so that it follows that we cannot review it adversely in any particular.

We have been asked to pass on 48 distinct propositions. We think we have explained fully our views on all the topics to which our attention has been at all carefully called; and, there are so many objections, the court cannot be expected to run out for itself any questions with regard to which it has been addressed only in a general manner.

One topic of an interlocutory character remains to be considered. As we have said, a receiver of the assets of the respondent corporation was appointed immediately on the filing of the bill, without notice to it, on the giving of a bond, with a surety, in the penalty of $10,000. The fact that a receiver was so appointed makes the burden of a very considerable number of the errors assigned. Appointing a general receiver of the assets of a corporation, or a copartnership, or an individual, carrying on an active business, in which the maintenance of the credit of the respondent is a necessary element, is quite equivalent to the issue of an execution before judgment, and means, ordinarily, financial ruin. Therefore, in Joseph Dry Goods Co. v. Hecht, 120 Fed. 760, 764, 57 C. C. A. 64, the opinion rendered in behalf of the Circuit Court of Appeals for the Fifth Circuit well said:

"Notice should be given and the defendant furnished an opportunity to be heard, except in cases of imperious necessity, requiring immediate action by the court, and where protection can be afforded the plaintiff in no other way."

Consequently, in that case the decree of the Circuit Court appointing a receiver was reversed on an appeal taken within the period of statutory limitation. The receiver here was appointed on May 8, 1905. The act now in force is that of April 14, 1906 (34 Stat. 116, c. 1627), which has not changed the law so far as any question before us is concerned. The law in force on May 8, 1905, was that of June 6, 1900 (31 Stat. 660, c. 803 [U. S. Comp. St. 1901, p. 551]). Under the last-named statute the respondent might immediately have appealed from the decree appointing the receiver; and it was settled, in accordance with plain rules of interpretation, in Joseph Dry Goods Co. v. Hecht, just cited, that an appeal would lie notwithstanding the order appointing the receiver was ex parte.

The time limit for an appeal under the statute of 1900 was, as is well known, 30 days. It has never been decided by the Supreme Court whether that statute, or other statutes of that class, still permit appeals from the interlocutory orders to which they relate to be taken after final decrees and after the expiration of more than 30 days. It would not be an unusual or an unjust construction to hold that they do not, because, as in the present case, if the appeal from an interlocutory order appointing a receiver is delayed as it was prior to this class of statutes, the appellate tribunal is left to deal often with mere wreckage; and, as in the present case, ordinarily no advantage comes from a reversal. In view of this last fact, we are quite content that the record shows beyond question that the respondent acquiesced in the appointment of the interlocutory receiver promptly after it was made. While it is true that the terms of the agreement relating thereto, signed by the counsel for the parties and filed in court, and on the same day put into the form of an interlocutory order or decree, did not in express language state that the parties acquiesced in the receivership, yet they were of so radical a character that in equity the respondent cannot deny an implied, if not an express, consent.

Both the agreement and the interlocutory order contained a provision that the powers of the receiver should be those of a permanent receiver until the final determination of the cause; and, what is an emphatic feature, they provided that the bond to which we have referred should be canceled and all liability thereunder terminated. All this is inconsistent in equity with any proposition that the order, or decree, appointing the receiver can now be reversed.

Perhaps we should observe that one of the errors assigned complained that creditors were allowed to intervene and to obtain relief concurrently with the original complainant. This is based on the propositions that the intervening petitioners had filed no proper, sufficient, or legal petitions, pleadings, or statements of claims, and that they had in no way established their right to be made parties. So far as the last branch of these objections is concerned, they did establish their claims before the master to his satisfaction; and, as we have shown, we cannot on this appeal revise the master's doings. The respondent's brief is practically a nullity beyond restating this assignment in general language, and it contains no references to the record required by our rules. All we have been able to find through our own investigation is a motion by the respondent for specifications by the intervening creditors, without anything to show that it was ever brought to the attention of the court. For this and other reasons, the record is insufficient to call on us to review the case so far as this topic is concerned.

The decree of the Circuit Court is affirmed, and the appellees recover their costs of appeal.